Judge UnDEawooiJ
delivered the opinion of the Court.
Joseph P. Letcher, sold a quantity of merchandize to the firm of' Cronley and Letcher, composed of Edward Cronley and Stephen G. Letch-er; and took their note tor $3000, payable on the 1st of May, 1825,' On the 24(h April, 1825, S. G. Letcher being then absent from the state, Cronley sold the merchandize then on hand, to the firm of J. B. Curd, & co. composed .of-John B. Curd, James S. Hopkins and Benj. H. Perkins, for $2400, payable in four equal instalments,in six, twelve, and twenty-four months, with interest from the 25th of April, 1825, until paid'. On the 4th of June, 1825,- J, P. Letcher filed his bill in chancery against Cronley and Letcher,.and against J. B. Curd, & co. stating in substance,. that S. G. Letcher had- left the state with a drove of horses, had-sold them and squandered the money; and that it was doubtful whether he ever would return; that Cronley and Letcher had no pro-, perty subject to execution; and that he had no means of collecting the debts due him unless he should be permitted to subject the debts due by Curd & co. to Cronley and - Letcher, to the payment of his debt. He prayed tor, and obtained a restraining order upon Curd & co. requiring them not to pay the debts due by them to Cronley and Letcher until the further: order of the court.
S. G. Letcher did not answer. The bill was taken for confessed against him upon publication. Cron-lev, in his answer, admitted the sale’s oí the merchandize, and existence of the debts, but denied his insolvency and the jurisdiction of the court. Curd & co. likewise denied the jurisdiction of the court, but insisted, in case the court should entertain jurisdiction, that they were entitled to various credits, &e. The court settled the different claims set up by Curd & co. admitting some, and rejecting others, and decreed the balance due by Curd & co. to the complainant, Jos. P. Letcher; and gave him the right to sue out execu *444 tion for the balance of his debt left unpaid, after crediting the sum decreed against Curd & co. From this ddcree, the defendants in the circuit court have prosecuted a writ of error*
Sf one of joint oblijfors in "ote’ 0,1* ligoe may° proceed in sub'e^tTab ^ sentee's^fto-sesin artimt, ^fr^ddit* 0 118 c
Obliffee not secute resí-1'0'" dent, oblizor to insolv' noy, ínto chancery In such case, resident obli-¿¡es.
*444 The first question for consideration is, had (he circuit court jurisdiction? We have been referred to the cases of M‘Ferrans vs. Jones, &c. II. Litt. 219; and Ormsby vs Lynch, Litt. Select Cases, 303, as authorities to prove that the court had no jurisdiction. The case of M'Ferran vs. Jones, re-affirms the doctrines advanced in Buford vs. Buford, I. Bibb, 305; in which it is decided that a chose in action cannot bo-subjected, by a chancery proceeding, to the payment of a debt. That this doctrine is in the general true, is readily conceded; but (hat it is universally so is denied. There are several statutory exceptions ;sueh is the proceeding against absent defendants, and their debtors residing within the sla’c, allowed by the provisions of the act of 1796,1. Digest 58;and such likewise, is the proceeding tolerated by the 6th section pf the act of 1821, abolishing imprisonment for debt; I. Digest, 505. This last statute has no operation in the present case; because J. P. Letcher never reduced his chose in action to a judgment, and sued out execution in tt.e manner provided for by the statute, to enl'He him to proceed in chancery. We are, however, of opinion, that his case is embraced by the act of 1796. Stephen G. Letcher, was not within the shRe at the time of filing the bill. . He did not return before the final decree. He was interested in the debt due by Curd & co* It is manifest-that he was not subjected to the operation of a common law tribunal, because of his absence. He could not he reached exceP*- by a proceeding in chancery. His situation, therefore, to our minds presents the very case which must have entered into the contemplation of the legislature when the statute of 1796 was enacted. But it is urged that as Cronley was a resident, it was ^‘ Letcher’s duty to proceed at law against him; and first exhaust the legal remedy, before going info chancery. We think otherwise. There is no part ^,e statute which directs where two or more are jointly bound, and one is absent, that the absentee shall not be proceeded against in chancery, until the *445 residents have been prosecuted to insolvency at law. Because, the consequence of taking judgment at law against one, upon a joint demand, where two or more were bound, might have the effect of discharging the others from liability. It would at least lead to embarrassing consequences; to prevent which, a suit in chancery against the absentee, including the residents as necessary parties, will operate as a safe remedy. The statute gives it against the absentee; and we will not clog the operations of the statute, by fabricating conditions which might render the remedy altogether useless. Residents who are jointly bound with the absentee, are proper and necessary parties; and the chancellor who docs not administer justice by halves, may, and ought to bring all that are bound before him; and then do complete justice, although a common law' tribunal might be competent to administer it partially against some of the parties. The absence of S. G. Letcher from the state, in our opinion, gave the court jurisdiction. The case of Orms-by vs. Lynch, has no bearing on the controversy. The question there turned upon the construction of the statutes, giving jurisdiction to the genera] court as embracing controversies “between non-residents, and between non-residents and the citizens of this stale.” The distinction and difference in tne meaning of the terms “absent defendants” as used by the act of 1796;'and “non-residents,” is as striking as that between the meaning of the latter term and “citizens.” A man may be a citizen of Kentucky, and yet a non resident; and he may be a resident, and yet an absent defendant. It is the duty of men who owe debts, to pay them before they leave the state; and to make arrangements for meeting them, if the debts should become due in their absence. If they fail to do so, they may be proceeded against under the act of 1796.
*-)iffcr.enoe'in tha terms ‘absent de-as <• ,gSg and^nonresidents.”
p-creditor of “rbrent de-te«ilf>nt’ wish him’eiffñím6 ),¡IVBient of n'U-ntt on J.in7. hands, he must pay the money into court.
*445 --
The second question presented by the record, relates to the settlement of the different accounts and claims brought into litigation. Curd & co. contend that they ought not to be made pay interest, while the money due by them was injoined in their hands. We think differently. By tiieir contract, they agreed to pay interest from the date of their purchase, of the goods; and if they did not wish to pay interest after *446 the injunction was served upon them, we think they should have paid the money into court. And thus,having delivered it into the custody at thelavi,.they might j^ave exonerated themselves. Having retained the Ose of the money, it is right that they should pay interest upon it.
Cunningham and Harlan, for plaintiffs; Monroe, for defendants.
Perkins became bound in a replevin bond, to Allen and Grant, as surety for. Cronley for $442 99. Curd & co. in their answer say, that at the time they purchased the.goods,, as Perkins was then liable to Alien and Grant, and might ultimately be compelled to pay them; “therefore, the said Perkins was to have a lien upon the third payment, (or instalment) to secure him against the liability aforesaid.” The court disregarded this claim of Perkins, and we think properly. There is no proof in the record, that any such agreement was ever made. Besides, there would be manifest injustice done to S. G. Letcher,'to permit Perkins to take the funds of the firm of Cronley and Letcher for his indemnity; and thereby, to divest them frorp .the payment of debts due by the firm, inasmuch as such a course would have a direct tendency to increase Letcher’s responsibility, in the event of Cronley’s insolvency. It might be a question of doubt, whether Cronley possessed power to pledge the funds of the firm, or to create a lien on them to the prejudice of his partner. But it is not now necessary to decide that question.
There is an order spoken of in the answer of Curd- & co. drawn by the complainant, in favour of Perkins, on Cronley and Letcher; but there is no proof in relation to it, neither is it exhibited.
We perceive no error in the mode of settling the other accounts.
Wherefore, the decree is affirmed, with costs and damages.
Mills and Brown, as counsel for plaintiffs in error, pi esent-ed the following petition for re-hearing,
In this case, it is not intended to go back and ask the court to re-consider the whole ground. But it is *447 assigned for error, that the decree is for too much, and so it really is. This matter was overlooked in the court below; audit is proved and believed, that in looking to, and considering the principles in the cause, it has been overlooked in this court.
Petition for a' re-hearing.
The following calculation, it is believed, will stand the test, aud indeed it is as favorably, as can be made and yields fractions, both of sums and time, to the defendant in error.

Petition for re-hearing. a
It may be Inquired how did this happen? We answer by overlooking Bosley’s debt, and the open account of Curd & Co., at least all that part of it not embraced in the payment to Haggin. Indeed, the court in the decree only allows the debts of Givens, Barbee, Haggin and Rochester, expressly leaving out the debts of Bosley, and omitting to include the balance of the.acfcount of Curd & Co. after Haggin’s debt was taken out. Thus, the real difference is produced. 'Why was this done, and why is Bosley’s left out? He expressly proves it in his deposition, uncontested; as expressly as either Givens, Haggin, Barbee or Rochester. Why was the balance of the open acountof Curd & Co. left out? It is clearly established by Caldwell, and no reason for disregarding it exists. It is too notorious to draw out of the hands of garnishees, money, when their creditors owe them. ' Retention is the most simple and obvious remedy known to the law, or to common transactions. The attention of the court, is therefore, respectfully re-called and is asked to re-view the calculation. It ■makes a difference, not only of the $48, but also, of the costs, and upwards of $200 in the ten per cent, damages, when Curd & Co. are only garnishees.
If the court shall find this calculation correct, (of which no doubt is entertained, for if made more accurate,, it will result more in favor of Curd & Co.) the decree ought tobe altered, and a reversal should take place; and hére it will be proper to say a few words about costs, not because the propriety of giving them their costs is doubted, but because an inclination in the decisions of the court, is perceived to vary the ordinary rules on this subject, which have heretofore governed this court, and costs are more frequently refused or divided than, formerly. It is true, the statute for partial reversals, allows of a discretion in the court. But as discretion unbridled, is not to b'e tolerated in judicial matters, the court heretofore had guarded and restrained that discretion, by legal rules which classified the cases when costs were given or refused.
If the party applying to this court, barely aided his attitude, by his writ of error, such as getting *449 fear out of the wav, by a dismission, without prejudice, instead of absolute; or an infant, got his time allowed, after he came of age, when time was not allowed by the decree below, or current interest was counted, then costs have been refused. ' But in all cases, if a party asking a demand here, got even so small a part, or if he resisted, or labored- to get clear of a demand, which the court below had,given against him, and only got clear of a small part, he uniformly recovered his costs. Indeed, no case can be found, when the court refused costs, on account of the small proportion, which the relief here bo.re -to the whole demand. If it was part of the original demand claimed, part of the matter in contest, however small, it has carried costs. To find out the practice on this subject, it requires a looking over most of the decrees, and examining the direction As to costs, which it was the invariable practice to give in the opinion, and that generally without any explanation or remark.
Petition lot e re-hearing.
Reply to the petition.
But the foregoing rules, rather more fully understood than expressed, governed the practice of the court. •"
A re-hearing is solicited.
Monroe, as counsel for defendants in errot, filed the following fe-pty to the -petition.
The account of Curd & Co. Sgainst Edward Cronley, for, among other things, “bunches of feathers” in December, and “gloves per brother” in May, has been properly excluded, on the'same principle that the claim of Perkins against Cronley was disallowed, and it is not understood that the principles ©f the opinion delivered, are assailed by the petition.
The amount paid by Curd & Co. to Haggin, on the 4th and 17th of May, was not.allowed- because it was charged in that account, but because it was proved by the witness, to have been paid as that much upon the note Haggin held on Cronley and Letcher, for commonwealth’s bank notes.
But this amount paid Haggin, was not allowed as paid in specie, but as paid in the bank notes which it is proved by several of the witnesses, were then worth but fifty cents per dollar.
Reply to the petition.
Suppose the account stated in the petition to he correct, down to 19th May, 1825.

It is evident ¡from (he allegations of the answer of Curd & Co. and the deposition of Haggin, that (he $43 43 3 4, paid on the order of Cronley and Letcher to Haggin, was reckoned in the currency and paid in satisfaction of but that number of the dollars and cents of the note Haggin held on Cronley and Letcher. The answer of Curd &. Co. is, that they had paid to Haggin about $160,1» currency. Not one word is said by them, of their having paid to Haggin one dollar, in either specie or merchandize, calcula’ed in such currency. And the distinction between the puymenfsin specie and bank notes, was present in their minds. Their attentions were drawn immediately to it. They had just before spoken, in their answer, of several payments made in specie, all of which are put ■together and stated as payments in specie. And then they proceed and state the payments in bank notes. And it might well be questioned whether any proof of the payment of any thing but the notes on the bank of the commonwealth to Haggin, would be admissible evidence under the allegations of the answer. An allegation of a payment on set-off, in bank notes, at a discount of fifty percent, will not admit proof of' the payment of merchandize, at specie value. But it is unnecessary to resort to this objection, because it is sufficient for us to confine the claim of the plaintiffs in error to the allegation as made, and which the proofs were intended to maintain. Haggin evidently intended to be understood that he had received of Curd & Co. only $43 43 3-4, of the nominal amount of his demand. He speaks of th if sum paid him in part -of his demand for $165’ 93 3-4, in common *451 wealth’s bank notes, in the same breathy and the statement of the payment of the balance, afterwards, by Gronley, immediately follows.. An inspection of answer and depositions, on this matter,.is, it seems to me, entirely conclusive.
Bpply to the. petition.
But admit for the sake of the argument, that there, is an ambiguity on this matter; to whose disadvantage shall it operate? Surely it shall.be against Curd & Co. and tor two reasons:
1st. This is a payment or set-off claimed- by them,. .and, therefore, they must prove it; find,
2d. They have in their possession the order drawn-by Cronley and Letcher on them, in Haggin’s favor,. which would have removed all doubt;.and they have failed to produce it. but offered the more uncertain evidence. See Jones vs. Murray, III. Monroe. 83-4.
It might well be questioned whether this parol' •evidence was at.all compotent.to prove the payment to Faggin, on the order of. Cronley and Letcher; or Cronley forthem, without the production of the order.
I suppose the amount paid by Cdrd & Co. to Bos-ley, was iu fact allowed, though his name is omitted - in the introductory part of the decree, because the sum decreed is just about that amount less than it ought to be, on the supposition that that claim had; been^rejected. , - ■
But the same objfection above suggested, .might be taken to the testimony offered to prove- the pa> ment to Bosley. It is stated by Bosley, the only witness to -this item, that Cronley and Letcher gave him an order drawn on Curd & Co. which was,immediately accepted and a credit given to him on their books, for the amount in commonwealth’s bank notes. And now this order was delivered to Curd & Co. and yet they fail to produce it. Here, the time the order was given and accepted, the amount and currency, were all material, and yet, the writing is withheld without even an allegation of there being some inconvenience an producing it,¿ind the evidence of the memory of a witness is offered to prove its contents.
This objection to the evidence is still stronger against the claim for the amount of Cronley and.- *452 Letcher’s note to Barbee. It was competent to prove, by parol, the payment of the money by Barbee, but the execution, existence and tenor of the note, would have been all better proved by the production of the writing, and it is earnestly insisted that no other evidence was competent to charge Cronley and Letcher. Those orders, and this note to Barbee ought to have been held by Curd & Co. according to the regular course of business, until they had obtained corresponding credits on their notes to Cronley and Letcher, or had obtained other evidence of their right, to the credits on their notes. And it is not pretended they had obtained such credits, nor is there any allegation that it would not have been perfectly convenient for them to produce all their papers; and, in fact, the note to Barbee was shown to him on the same day he gave his deposition; and yet, notone of these papers are produced.
Tteph o the petition.
Bot enough of this. These questions are not now material, because, after admitting the competency of all the testimony of the plaintiffs in error, the decree is still a few cents below the sum the complainants were entitled to; the payment to Haggin being cited, and the account for the feathers and gloves, amounting to about twenty dollars, being omitted. If, however, contrary to our expectations, any doubt should bo raised as to the propriety of either of these items, the scaling of the payment to Haggin and rejection of Cronley’s account for the feathers and the like, then we would contend with great confidence, on the objection to the proof, as incompetent to establish the right of the plaintiffs in error, to credits, for either the-payment to Bosley or Barbee. I say nothing of the payment to Givins.
By the institution of our suit, and service of the process, we became, from that date, substituted to Cronley and L-'-tcher, as the creditors of Curd & Co. and stood, thenceforth, as the assignees of the note; and, therefore, we could not be resisted by any payment or set off, without the defendants proved their claims, on or before our suit, and also produced such evidence to establish each item, as would he competent against Cronley and Letcher, if they were still *453 the creditors, and resisted the alleged payments and discounts.
to the reply,
Cronley and Letcher would surely have had the right to demand the production of their orders and notes, and could not have been charged without them, and much less can the complainant be effected without the production of the competent evidence.
Mills and Brown filed the following answer to the reply to the petition for a re-hearing.
The counsel for Curd & Co. perceive in the swer, though neatly and ingeniously hidden, a full justification of the petition, and.a proof that the claim is for too much.
It is worthy of remark^ that even the ingenious counsel of the defendant in error, although he swells the principal, cannot get his inprest. as high as that allowed by the court below;
But the answer adrriits the calculation of the petition is correct, down to the 19th May, 1825; that is, $1969. indeed, be could not do otherwise. But he here ingeniously undertakes to shew, that, the debt through Haggin must be sealed. There is no plausible ground for this. It is not proved, that iÍ is paper. But why disallow the amount paid Haggin, or the whole amount proved by Caldwell? The answer seems to suppose, that the account was due Ed,ward Cronley, alone. It is clear, although the company is left out, it is from the books of Cronley and Letch-er. For in the account is the amount‘paid Haggin charged, paid professedly for Cronley and Letcher.
On thesubje.ctof commonwealth’s paper, as to the account of §82 25, see the deposition of Caldwell. If it was paper, whose interest was it to prove it? and why suffer then two witnesses to swear, and not prove from them, that it was bank paper? But to get clear of the force of the petition, the answer flies from plain sailing and resorts to.technicalities: the obligations are not sufficient; they are not as precise as an indictment or even a declaration at common law; and therefore, the proof cannot come in! well then, take the allegation instead of the proof, and we are safe.
Answer to the ■reply.
One point will now be mooted, which might hove-slept, had not the answer been thus technical. Re* member that Curd & Co. are garnishees merely. Do they stand as other defendants, or have they ben-efitand privilege of all garnishees, allowed to charge and discharge themselves? Gan the court give against them, more than they, by their own oath, admit to be due, of mustttiey prove every affirmative? It'is insisted, that the former with respect to garnishees, is the general rule, and not to- be departed from, unless their answer is disproved or fraud is charged* neither-of which is the case here. Remember the proceeding in chancery, to get at the debtors of debtors, is a kind of a substitute for proceeding by ca. sa. at law, till the first debtor renders an account of his credits; and then his debtors charge or discharge themselves,, by their own oath-. As this proceeding against ab? sent debtors, is a substitute for an attachment at law, and applies to cases- when an attachment at law,, under the statute does not lie, as well as when it does. Shall it then be more rigid? At law the defendant charges or discharges himself by his own oath; is the chancellor more distrustful and incredulous, than a common law judge, is directed to be by the statute? There is no caseVemembered where this point is expressly decided, but there is no case where the court has refused to give full credence to the whole answer of a garnishee, except fraud has been charged, or the answer disproved. Take this rule, and we are end* tied to the credit, for the order rejected by the court, which the court say is not proved.
But the answer says, that the evidence is not competent. Produce the vouchers, receipts, notes, &c. and, until this is done, allow none! Is it ever necessary to produce a voucher after it is paid, and is func-tus officio? Never. Cases may be multipled to this effect. Why produce a receipt between other parties? It is not evidence, if produced. The proof must be, if we are held to strict proof besides the answer of the garnishees, that the money was paid, and not that another party said in a receipt that it was paid.
But the answer admits that the decree below omits account proved by Caldwell; the debts of Haggin *455 and Bosley, are left out: bul yet, the opposite counsel would wish to smuggle them in, and try to prove that they, or one of them, were allowed, by bundled with the rest. Will the court give such a construction to the decree below? Its terms cannot be mistaken.
Answer to the rep
Reptfc-<tion t0 an*,4rer--
B'if now let it he supposed for the sake of argument, that the court has allowed as little as would be produced, if the debts of Haggin, Bosley, and the ac-.-ou >i proved by Cald veil, were allowed; still it will oe contended we are entitled to reversal for the sake of justice between Cronley and Letcher, on the one side, and Curd & Co., on the other. If then, accounts are not allowed here, then they are still matters of dispute between these two'parties, in settling their other matters: and Curd & Co. may lose them, because they are adjudicated against, them, or if they are. allowed, then Curd & Co, may recover them again because they are expressly omitted in the decree. One of these two consequences must follow. Of course we are entitled to recover; to have an express allowance, or an express rejection, so that there be no mystery left to be unravelled by future controversies.

Mr. Monroe presented the following replication to the answer of Messrs. Mills and Brown, to his reply to the petition for re-hearing.

There can be no difficulty in the settlement of the accounts between Cronley and Letcher; and Curd & co. The former wjll just give to the latter, a credit for the sum ordered and decreed by the court to be paid to the complainants; and all will be right. Indeed, the decree in terms discharges Curd &. co. from their obligation to Cronley and Letcher, to the amount decreed to be paid by them to the complainant. How this amount was made up, cannot bo- material. The statement of the case in the decree, or rather in the introduction to the decree, are but the reasonings of the chancellor; and whether right or wrong, does not affect the result. No wrong in arithmetic may produce a right.
I had supposed the answer of the garnishees stood, in this ease, on the same grounds as the answer of *456 other defendants in equity. It would be a strange rule of equity, to allow a defendant in such case, call him by whatever name you may, to prevail on his own answer, setting up matter in word; and of the demand he had confessed, he was bound for on his promissory note, against the positive proof of his own witnesses.
Replication to answer.
In the answer, these defendants state they “had also paid in part, and assumed and bound themselves to pay off the balance of the debts of said Cronley and Letcher, to-wil: $160 in currency* to John Rochester; $44 in currency, to Doctor John Bosley; $70 in currency, to Doctor Jones; also about $160 in currency, to Harvey Haggin; for all which sums, these respondants claim to be entitled to credits.” And then they set to and disprove by depositions, that they are entitled to a credit for any payment to Doctor Jones, (see Roberts’s deposition) and that so far from their having paid the $160 to Haggin, they had paid but $43 43 3 4; and Cronley and Letcher themselves, had in fact, paid the balance before the answer of these respondents was filed. See Haggin’s deposition, p. 37. And now the counsel ofthese gentlemen insist in this court, that this, their disproved and discredited answer, shall be taken as true, against their own proofs! And to support this position, they cite a rule, to which they admit there is an exception; where “the answer is disproved, or fraud is charged.”
But the counsel, is not content with insisting on the credit for $160, alleged to have been paid Haggin, in currency, in opposition to their own proofs; but he insists, that if he cannot succeed in that, the court shall take it, that payment made to Haggin, to whom nothing was owing but bank notes, was made in specie, or its equivalent, against the allegations of the answer.
First they want to succeed against their own proofs, and then against their own answer. And as I do most confidently contend, against the depositions also.
It was necessary, to entitle Curd & co.' to credits for debts paid for Cronley and Letcher, that they should prove the debts were owing; and then that they had *457 paid them. The note on Cronley, &c. was the better evidence of the debt, and I think, the only evidence, when the no.te may be produced by the party, as in the case of the note to Barbee. The note was not functus officio, until Curd & co. had obtained their credit for the amount on their notes to Cronley and Letcher; and in fact was preserved, and “to the fore” the very day the parol proof was taken; and why was it not produced?
Nor were these written orders of Cronley and Letcher, fundus officio, when paid to the-ir holders; but unless I am neither lawyer nor merchant, ought to have been kept until he obtained his notes to be surrendered to him, or had received other acquittance.
These orders were the vouchers of Curd & co. and ought to have been produced whenever called to settlement, or demand made of them by Cronley and Letcher, or any one claiming under them, either in court or elsewhere.
Is it probable that the purchase of the bunches of feJtbers and gloves for Cronley’s brother, are to be taken as purchased on the partnership accountof Cron-ley and Letcher, whilst the account exhibited is in the name of Cronley only? The same as to the whole account.
In fact, this matter might be urged against the payment to Haggin; but that is unnecessary. We hope the decision rendered may be allowed to sleep.
The court, upon consideration, overruled the petition for re-he.aring.